**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

COMMODITY FUTURES TRADING COMMISSION,
        Plaintiff,

        - against -                      ECF Case

AVRAHAM EISENBERG,                     No. 23 Civ. 173 (LGS)
        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,
        Plaintiff,

        - against -                      ECF Case

AVRAHAM EISENBERG,                     No. 23 Civ. 503 (LGS)
        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A FULL STAY OF PROCEEDINGS

                                            DAMIAN WILLIAMS
                                            United States Attorney for the
                                            Southern District of New York
                                            Attorney for the United States
                                            of America.

Thomas Burnett
Assistant United States Attorney
    *- Of Counsel -*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................................... 2

      Overview of the Alleged Scheme .................................................................................. 2

      Procedural Posture ......................................................................................................... 3

**ARGUMENT** ............................................................................................................................. 4

   I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE ....... 5

   II.   THE PROPOSED STAY IS APPROPRIATE ................................................................. 6

     A.   Applicable Law .................................................................................................. 6

     B.   Discussion .......................................................................................................... 7

          1.   The Extent of Overlap ............................................................................. 7

          2.   Status of the Criminal Case ..................................................................... 8

          3.   The Plaintiffs' Interests ........................................................................... 9

          4.   The Defendants' Interests ....................................................................... 9

          5.   The Public Interest .................................................................................. 9

          6.   The Interests of the Courts ..................................................................... 12

**CONCLUSION** ....................................................................................................................... 14

**PRELIMINARY STATEMENT**

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (1) to intervene in the above-captioned cases (the "Civil Cases"), pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (2) for a full stay in these matters, including a stay of all discovery, until the conclusion of the parallel criminal case, *United States v. Avraham Eisenberg*, 23 Cr. 10 (RMB) (the "Criminal Case").

Courts in this district frequently stay civil proceedings that have the potential to affect a criminal case. Here, all of the conduct that is at issue in the Civil Cases is also at issue in the Criminal Case, meaning that common issues of law and fact exist.[1] The stay sought by the Government will conserve this Court's time and resources, because the outcome of the Criminal Case is likely to have a significant impact on what issues are ultimately in dispute in the Civil Cases. Moreover, allowing discovery in the Civil Cases to proceed without restriction risks giving the defendant, Avraham Eisenberg, the tools to improperly obtain impeachment material regarding the Government's witnesses, circumvent the criminal discovery rules, and improperly tailor his defense in the Criminal Case.

Eisenberg's counsel has informed the Government that Eisenberg consents to the issuance of a stay in the Civil Cases. The SEC and CFTC have each informed the Government that they do not oppose the request for a stay.

---

[1] As discussed below, the Criminal Case also includes certain factual and legal issues that are not directly at issue in the Civil Cases.

**FACTUAL BACKGROUND**

The Civil Cases and the parallel Criminal Case both arise out of allegations that Avraham Eisenberg orchestrated and carried out a scheme to obtain approximately $110 million worth of cryptocurrency from a cryptocurrency exchange called Mango Markets by, among other things, artificially inflating the price of a cryptocurrency called MNGO relative to the price of another cryptocurrency called USDC. The relevant factual allegations are set forth in Indictment 23 Cr. 10 (RMB) (the "Indictment") in the Criminal Case (attached hereto as Exhibit A), in the CFTC's complaint against Eisenberg ("CFTC Complaint") (ECF No. 1 in 23 Civ. 173 (LGS)), and in the SEC's complaint against Eisenberg ("SEC Complaint") (ECF No. 1 in 23 Civ. 503 (LGS)).

Overview of the Alleged Scheme

The Indictment alleges three criminal counts against Eisenberg. Count One charges Eisenberg with committing commodities fraud. Count Two charges Eisenberg with committing commodities manipulation. And Count Three charges Eisenberg with wire fraud. All three Counts relate to Eisenberg's scheme—carried out in October 2022—to fraudulently obtain approximately $110 million in cryptocurrency from Mango Markets.

As alleged in the Indictment, Mango Markets allowed investors to buy and sell perpetual futures contracts ("Perpetuals"), including Perpetuals based on the relative value of Mango Markets' native crypto token, MNGO, and a crypto stablecoin called USDC ("MNGO Perpetuals"). (Indictment ¶ 2.) An investor who buys MNGO Perpetuals stands to profit if the value of MNGO rises relative to the value of USDC. (*Id.*) On or about October 11, 2022, Eisenberg deceptively used two accounts on Mango Markets to sell himself a large number of MNGO Perpetuals. (*Id.* ¶ 3.) Eisenberg then made a series of large purchases of MNGO using USDC, with the objective of artificially increasing the price of MNGO relative to USDC and, in

turn, the price of MNGO Perpetuals on Mango Markets. (*Id.*) That purchasing caused the price of MNGO Perpetuals on Mango Markets to rise approximately 1300 percent. (*Id.*) As the price of MNGO Perpetuals on Mango Markets rose due to the manipulative purchasing, the apparent value of the MNGO Perpetuals that Eisenberg had purchased from himself also rose. (*Id.* ¶ 4.) That allowed Eisenberg to borrow, then withdraw, approximately $110 million worth of various cryptocurrencies from Mango Markets, which came from deposits of other investors in the Mango Markets exchange. (*Id.*) When Eisenberg borrowed and withdrew that cryptocurrency, he had no intention of repaying the borrowed funds, but rather intended to steal them. (*Id.* ¶ 5.)

The CFTC Complaint alleges two causes of action: first, that Eisenberg engaged in commodities fraud; and second, that Eisenberg engaged in commodities manipulation. The SEC Complaint also alleges two causes of action: first, that Eisenberg engaged in securities fraud; and second, that Eisenberg engaged in securities manipulation. The factual allegations in both the CFTC and SEC Complaints overlap substantially with the allegations in the Indictment because the CFTC and SEC Complaints, too, focus on Eisenberg's scheme to obtain $110 million in cryptocurrency from Mango Markets by manipulating the relative value of MNGO and USDC.

Procedural Posture

On December 23, 2022, the Honorable Gabriel W. Gorenstein authorized a complaint charging Eisenberg with commodities fraud. Eisenberg was arrested in Puerto Rico on December 26, 2023 and, on January 9, 2023, a grand jury sitting in this District returned the Indictment against him. Judge Berman arraigned Eisenberg on February 14, 2023. The next status conference in the case is scheduled for March 14, 2023.

The CFTC Complaint was filed on January 9, 2023. The SEC Complaint was filed on January 20, 2023.

## ARGUMENT

The Government's unopposed request to intervene and for a full stay should be granted. If litigation and discovery in the Civil Cases were to proceed at this time, there would be a risk of significant interference with the Criminal Case as well as waste of this Court's time and resources. The stay requested would not prejudice any of the parties to the Civil Cases; would prevent the circumvention of important limitations on criminal discovery; and would preserve the Court's resources because many of the issues presented by the Civil Cases will be resolved in the Criminal Case.

In similar situations, courts in this Circuit have routinely entered a complete stay of civil proceedings, even where, unlike here, a defendant objects. *See, e.g.*, *SEC v. Milton*, No. 21 Civ. 6445 (AKH), Dkt. No. 40 (S.D.N.Y. August 8, 2022) (granting government's motion for a full stay over defense objection); *SEC v. Sarshar*, No. 20 Civ. 6865 (GBD), Dkt. No. 35 (S.D.N.Y. June 3, 2021) (same); *SEC v. Durante, et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting government's request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge).

### I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect these civil proceedings would have on the Criminal Case and the identity of claims and facts between the parallel actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp, Ltd.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of criminal law cannot be protected adequately by the existing parties in the Civil Cases, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties. The Government has a distinct and

5

discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter. . . . Clearly neither the plaintiff nor the defendants have this identical interest." (internal quotation marks and citation omitted)).

Moreover, a trial in the Civil Cases in advance of a related criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. The Civil Cases and the related Criminal Case arise from the same alleged scheme. Holding a civil trial before a criminal trial would create the possibility that there will be multiple trials covering the same fraudulent and manipulative acts. This raises the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.   THE PROPOSED STAY IS APPROPRIATE

### A.   Applicable Law

This Court has the inherent power to stay proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, courts balance the following factors:

(1) the extent to which the issues in the criminal case overlap with

> those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*SEC v. Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-3 (S.D.N.Y. March 30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.*

    **B.**    **Discussion**

Application of these factors here overwhelmingly weighs in favor of the stay sought by the Government.

    *1.*    ***The Extent of Overlap***

That the Criminal and Civil Cases involve nearly identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 3 (S.D.N.Y. Mar. 1, 2016) (noting that "substantial overlap between the civil and criminal proceedings" weighs in favor of stay); *Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal

matter.").

Here, the facts at issue in the Civil Cases are also at issue in the Criminal Case. As to the scheme to fraudulently obtain $110 million in cryptocurrency from Mango Markets, the facts at issue are substantially identical, and virtually all of the same documents, witnesses, and other evidence that would be used by the CFTC and SEC to prove their claims would also be used to prove the Government's criminal case.

It is true that, as noted above, the SEC Complaint raises claims of securities fraud and manipulation, rather than commodities fraud and manipulation. But the fact that the SEC Complaint may involve some different factual and legal issues should not affect the decision to stay the Civil Cases where there is "substantial overlap between the civil and criminal proceedings." *Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 2-3 (ordering a partial stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment). That is not surprising given that, even if one case presents some different legal or factual questions than the others, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and from the Government, and inconveniencing witnesses. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 3. Here, that is unambiguously the case.

### 2. Status of the Criminal Case

The return of an indictment in the criminal case is also a factor that weighs in favor of a stay. *See Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. No. 43 at 3. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that

courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990). As the court explained in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*:

> A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.

886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). Thus, this factor also militates strongly in favor of a stay.

### 3. *The Plaintiffs' Interests*

Both the SEC and the CFTC do not oppose this Motion. Therefore, there can be no argument that there would be prejudice to the plaintiffs by staying the Civil Cases. *See Shkreli*, 2016 WL 1122029, at *5 (citing cases).

### 4. *The Defendants' Interests*

Eisenberg has indicated his consent to a stay in the Civil Cases. Moreover, granting a stay of the Civil Cases to permit the Criminal Case to proceed to its conclusion would actually inure to his benefit, since a stay will permit him, for now, to avoid making the choice between, on the one hand, being prejudiced in the Civil Cases by the adverse inference that would result from his assertion of his Fifth Amendment rights, and, on the other, being prejudiced in the Criminal Case if he waives their Fifth Amendment rights and participates in discovery in the Civil Cases.

### 5. *The Public Interest*

The public interest weighs heavily in favor of the stay proposed by the Government. As an initial matter, there is a public interest in ensuring that members of the public who would serve

9

as witnesses in the Civil Cases and the Criminal Case are not put to the expense and inconvenience of being called multiple times to testify regarding these matters. Allowing the Criminal Case to conclude before discovery proceeds in the Civil Cases serves this interest, because the outcome of the Criminal Case may render certain civil discovery unnecessary or streamline it such that witnesses may not be required to testify again.

The Government and the public also have an important interest in ensuring that Eisenberg does not use civil discovery or motion practice in the Civil Cases to circumvent the well-founded restrictions that pertain to criminal discovery. Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act provide that in criminal cases, the statements of Government witnesses shall not be the subject of discovery "until said witness has testified on direct examination" at trial, 18 U.S.C. § 3500.

The restrictions on criminal discovery that exist under the Federal Rules are designed to preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from

certain discovery by the Fifth Amendment").

Civil discovery in the CFTC and SEC actions could require the disclosure of witness statements. To that end, courts in this district have repeatedly endorsed limitations on civil discovery in recognition of the fact that a civil litigant should not be allowed to use civil discovery to avoid the restrictions that would otherwise apply in criminal discovery to a criminal defendant. *See SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, noting: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment"). Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he

seeks to use affirmatively. *See, e.g., SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

Therefore, in order to avoid circumvention of criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony, and because the defendant will not be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's application.

### 6. The Interests of the Courts

Considerations of judicial economy also weigh in favor of granting a stay. Courts have a strong interest in the efficient resolution of both the criminal and civil cases. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying related civil actions. *See SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding"); *SEC v. One or More Unknown Purchasers of Secs. of Global Indus., Ltd*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *Twenty First Century Corp.*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the outcome of the Criminal Case could directly affect the conduct, scope, and result of

the Civil Cases, this factor favors the Government's application.

*          *          *

In sum, and as set forth above, there is considerable overlap between the parallel proceedings; charges have been filed in the Criminal Case; there is no prejudice to the parties from the requested stay; there is a strong public interest in preventing the civil discovery rules from being used to improperly obtain discovery in the criminal case; and judicial economy is ensured by the requested stay.   Therefore, the balance of factors overwhelmingly favors the requested stay.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that its application for a full stay be granted.

Dated: New York, New York
       March 10, 2023

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

By:      /s/   Thomas Burnett
        Thomas S. Burnett
        Assistant United States Attorneys
        One Saint Andrew's Plaza
        New York, New York 10007
        Telephone: (212) 637-2354